THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* JOSÉ MAYSONET LAUREANO, Defendant and Appellant.

No. CR-62-355.     Decided June 1, 1964.

*Luis Raúl Jiménez* for appellant. *Rodolfo Cruz Contreras, Acting Solicitor General,* and *Héctor R. Orlandi Gómez, Assistant Solicitor General,* for The People.

Division composed of Mr. Chief Justice Negrón Fernández, Mr. Justice Blanco Lugo, and Mr. Justice Ramírez Bages.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

An information was filed against Roberto Rosa Maldonado and appellant José Maysonet Laureano, for a violation of § 29 of the Narcotics Act of Puerto Rico, Act No. 48 of June 18, 1959, 24 L.P.R.A. § 974z. The violation consisted in that they had in their possession and control and transported, *acting together and in common agreement,* a narcotic drug usually known as heroin. They were also found to have in their possession two smoked bottle caps, each with a cotton swab, a dropper, a hypodermic needle, and a piece of gray rubber. They were tried by the court without a jury, found guilty, and sentenced to imprisonment in the penitentiary for an indeterminate period of time ranging from five to ten years.

Is the evidence introduced sufficient in law to support the conviction of appellant Maysonet? Let us see.

The only witness who testified regarding the facts was agent Ibo Colón Gómez, who stated that on April 9, 1962, close to half past four in the afternoon, while he was on duty together with policeman Miranda patrolling an area next to the town of Manatí, they stopped a small Opel bus driven by Rosa Maldonado. He explained that they did so because they knew that the driver did not have a driver's license, which fact was admitted by the latter. At that time Rosa was riding in the front seat; Maysonet and a minor were traveling in the back seat. He added:

"While policeman Miranda was taking down Roberto Rosa Maldonado's personal circumstances, I went to the bus and I searched it and I found, wrapped up, a . . .

"Before going to the bus, what, if anything, did defendant Maysonet do?

"Maysonet then threw down to the floor a crumpled piece of paper and I went and looked for it. There was something like a whitish powder in the paper and I picked it up and *I went to the drawer in the bus* and I found two small caps with two swabs of cotton, a hypodermic needle, a tourniquet rubber, and a dropper."

He was shown a *piece of paper* from a magazine and he identified it as the wrapper of the objects above mentioned and reiterated that he had seized the objects, as well as the paper, from the drawer of the vehicle. He pointed out definitively that the paper he was shown and which he had identified was not the same paper Maysonet had thrown to the floor.

"Did you say that Maysonet threw a paper on the floor?
Yes, sir.
Where is that paper?
I took it to San Juan.
Have you been shown that paper here today?
No, sir."

Subsequently, the cover of an issue of McCall's magazine was offered and admitted in evidence as the paper thrown away by Maysonet at the time of the detention and which was coated with a "white dust."

Washington C. Lloréns, a chemist, testified that he examined the objects and the above-mentioned magazine cover. They were subjected to a chemical and microscopic analysis. Results: the two small caps contained some heroin residue; the magazine cover, which had collected some white dust, *was negative as to the presence of said drug.*

*That is all the evidence for the prosecution insofar as the question under consideration is concerned.*

Appellant Maysonet took the witness stand to testify in self-defense. He declared that he knew Rosa Maldonado by sight; that that day he saw him driving a small bus in the direction of the urban area of Manatí "and I asked him whether he could take me along and he picked me up"; that the police stopped the vehicle and that about 20 or 25 minutes elapsed from the moment he boarded the bus until they were detained. Later, when examined by the prosecuting attorney, he indicated the distance driven, which was stipu-

lated between 150 and 200 meters. He denied having held the magazine in his hands.

When entering judgment finding both defendants guilty, the judge stated the following:

". . . here it is not, we are not concerned with determining ownership. Here we are concerned with determining the possession of certain objects. And in accordance with the evidence, we think that those objects were in defendant's possession and at their disposal. And the detail that inclines us more to cling to this opinion is the guilty conscience of this young defendant *José Maysonet, known as Pino, trying to hide one of the items about to be seized and which were in his possession together with the other one.* Why, when he saw the police, did he have to hide one of the objects they were carrying? A crumpled magazine cover. Furthermore, this young man's behaviour on the witness stand is quite short of giving an impression of truthfulness. He is talking about the distance from the spot where he boarded the bus to the Vega Baja road, that he never left the bus, and yet, he says that it took them twenty-five minutes to travel that stretch and he indicates a stretch approximately from here to the second row of houses in front here, which in the event it was those two or three-story buildings in the Trina Sanz Development, it does not take that long in an automobile. Indeed, it does not take a person twenty-five minutes to walk from here to that place."

At the outset it should be noted that there is nothing in the evidence to justify the statement of the presiding judge to the effect that appellant Maysonet attempted to hide one of the items about to be seized, that were in his possession, meaning the magazine cover. We have seen that the objects utilized in the administration of narcotic drugs were wrapped up in a different magazine page and were located in the automobile drawer, out of Maysonet's reach, who was not riding in the front seat. Apparently the judge was too impressed with the lack of credibility in appellant's testimony concerning one point—the distance and time taken to travel it—which we are unable to connect with the basic facts of the

crime charged. Even if this testimony were stricken, the conviction could rest only on the evidence for the prosecution, but never exclusively on the weakness of the evidence for the defense. And the evidence for the prosecution is clearly insufficient to conclude that Maysonet possessed or transported the forbidden drug known as heroin, for it is only related to the cover of a magazine that gave a negative result in the chemical analysis. The mere fact that he was in the same vehicle belonging to Rosa Maldonado does not force the conclusion that both defendants acted together and in common. Contrary to the provisions of § 14 of the Weapons Law, 25 L.P.R.A. § 424,[1] the Narcotics Act does not establish that the presence of drugs in a vehicle shall be prima facie evidence of their unlawful possession by all the persons occupying said vehicle at the time such drugs are found.

The conviction cannot stand. The judgment entered by the Superior Court, Arecibo Part, on July 23, 1962, shall be reversed, and appellant shall be acquitted.

---

[1] "Section 14.—The presence in a vehicle other than a public service vehicle at the time transporting passengers for pay, of any of the weapons, instruments or appliances of the kind specified in sections 414, 415, 416, 419, and 420 of this title, shall be prima facie evidence of their unlawful possession by all the persons occupying said vehicle at the time such weapons, instruments or appliances are found. Where one of the persons found in such vehicle is the one carrying on his person such weapon, instrument or appliance, and said person possesses with him a valid license to carry the weapon, instrument or appliance so found, and he is not there under duress, said presumption of unlawful possession shall not attach to the other persons found in such vehicle. Nothing in this section contained shall apply to public officers, police, soldiers or persons authorized by this chapter to carry weapons by reason of their office."